UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEITH R. ABLOW,<br>    PLAINTIFF,<br><br>V.<br><br>FORE RIVER DOCK & DREDGE, INC.,<br>C-B MARINE CORPORATION AND<br>MAINE COAST CONSTRUCTION, INC.,<br>    DEFENDANTS. | )<br>)<br>)<br>)<br>)  CASE NO.:  1:05-CV-10347-RGS<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF C-B MARINE CORPORATION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**NOW COMES** the Defendant, C-B Marine Corporation (hereinafter "C-B"), and submits the following memorandum of law in support of its motion for summary judgment.

**I.     Procedural Background**

The Plaintiff, Keith R. Ablow, has brought a nine count complaint. Three of the counts are directed at C-B, they being Count II (Negligence), Count V (Trespass to Land), and Count VIII (Nuisance). (*See,* Plaintiff's Complaint, which is not paginated.) All counts claim that Mr. Ablow suffered property damage when the tug SEAWIND II, barge DS-64, and related equipment grounded on Mr. Ablow's beach on Plum Island in Newbury, Massachusetts.

There are no cross-claims against C-B.

Per the complaint, the instant case is within the admiralty and maritime jurisdiction of the Court. (*See,* Plaintiff's Complaint, jurisdictional statement on

the first page.) Accordingly, the general maritime law of the United States applies.

## II. Factual Background

The Affidavit of Roger P. Hale submitted in support of the summary judgment motion and the pleadings on file with the Court establish the following factual scenario.

On or about December 11, 2002, the tug SEAWIND II and barge DS-64 grounded on the beach at Plum Island in Newbury, Massachusetts, at or near property allegedly owned by the Plaintiff, Keith Ablow. Mr. Ablow claims that debris from the tug and barge and from the crane and other equipment located on the barge fouled his beach, thereby causing him property damage.

At all relevant times the sole business of C-B was to own certain marine construction equipment and to rent that equipment to others including another defendant in this case, Fore River Dock and Dredge, Inc. (hereinafter "Fore River"). At all relevant times C-B rented the tug SEAWIND II, the barge DS-64, and the crane and other equipment located on the barge to Fore River. The terms of the rental are spelled out in a certain Master Equipment Lease dated July 30, 1997 and attached to the Roger P. Hale Affidavit as Exhibit A.

Under the terms of the Master Equipment Lease and in actual practice, C-B surrendered and Fore River accepted complete possession and control of the tug and barge and of the crane and other equipment located on the barge. This complete transfer of possession and control is evidenced by the following:

1. C-B provided no captain, crew or other personnel to operate the tug, barge, crane or other equipment;

2. Fore River provided all captains, crewmembers, or other personnel to operate the tug, barge, crane or other equipment;

3. C-B had no duty to and did not inspect, repair, or maintain the tug, barge, crane or other equipment, but Fore River had the duty to do so and discharged that duty;

4. Fore River paid all charges associated with the operation and use of the tug, barge, crane and other equipment;

5. Fore River, not C-B, was obligated to comply with all laws respecting the use, operation and maintenance of the tug, barge, crane and other equipment;

6. Fore River, not C-B, provided all insurance for the tug, barge, crane and other equipment;

7. Fore River, not C-B, paid all taxes associated with the vessels and the equipment;

8. C-B played no role with respect to the voyage of the tug and barge from Gloucester to the mouth of the Merrimack River, which voyage ended in the grounding on Plum Island; and

9. C-B played no role with respect to the removal or cleanup of the tug, barge, crane and other equipment from the beach at Plum Island.

III. **The Contract and Actual Arrangement Between C-B and Fore River Constituted a Demise or Bareboat Charter, and C-B Bears No Personal Liability for the Grounding or for the Removal of the Tug, Barge, Crane and Other Equipment from the Beach.**

The terms of the Master Equipment Lease between C-B and Fore River and the actual conduct of the parties establish that Fore River was the demise or bareboat charterer of the SEAWIND II and the barge DS-64. In a demise charter, the owner surrenders possession, command, navigation and control of the vessels to the charterer. *Reed v. The YAKA,* 373 U.S. 410, 412 (1963);

*Guzman v. Pichirilo*, 369 U.S. 698, 699 (1962); *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993); *Uni-Petrol Gesellschaft v. M/T LOTUS MARU*, 1986 AMC 554 (S.D.N.Y. 1985), 615 F.Supp. 78; *In re Tidewater Barge Lines, Inc.,* 2005 WL 3992463 (D. Ore. 2005), 2006 AMC 542, 550; Gilmore and Black*, The Law of Admiralty* (2nd Ed.) (1975) page 240; and 2 Schoenbaum, *Admiralty and Maritime Law* (4th Ed.) 2004, Section 11-18, page 43.  Here, Fore River held and exercised all the indicia of possession, command, navigation and control of the SEAWIND II, barge DS-64, and of the crane and other equipment located on the barge.  C-B played no role with respect to the operation of the vessels, their grounding on Plum Island, or their removal from the beach.

In the eyes of the law, Fore River as the demise charterer is treated as the owner of the vessels, sometimes called the owner *pro hac vice*, and bears the owner's liabilities.  *Reed v. The YAKA*, *supra* at 412; *Matute v. Lloyd Bermuda Lines, Ltd.*, 931 F.2d 231, 235 (3rd Cir. 1991); *In re Tidewater Barge Lines, Inc., supra* at 551; *Uni-Petrol Gesellschaft v. M/T LOTUS MARU*, *supra* at 556; *Cintorino v. Ocean Ships, Inc.*, 2000 WL 33179300 (D. Haw. 2000), 2000 AMC 2580, 2583-84; Gilmore and Black, o*p. cit.* at 242; 2 Schoenbaum, o*p. cit.* at 43.  Because Fore River leased the SEAWIND II, barge DS-64, and the crane and equipment under a demise or bareboat charter, C-B bears no personal liability for any damages sustained by Mr. Ablow.  *Dant & Russell v. Dillingham Tug*, 895 F.2d 507 (9th Cir. 1989), 1990 AMC 1372; *Uni-Petrol Gesellschaft v. M/T LOTUS MARU, supra* at 557; Gilmore and Black, o*p. cit.* at 242; 2 Schoenbaum, o*p. cit.*

at 43; Davis, *Maritime Law Handbook* (2007) at 325. *See*, The *Barnstable* 181 U.S. 464, 468 (1901).

> …In general, all *in personam* liabilities arising out of the ship's operation are brought home to the demise charterer…The vessel, so far as third persons are concerned, is his vessel, and the men are his men; such of their defaults as are attributable to the owner and employer under respondeat superior doctrines are his to answer for. Gilmore and Black, *supra.*

This is no more than logical. Because the actions of Fore River's captain or other personnel allegedly caused the grounding on Mr. Ablow's beach, C-B, which played no role in selecting or supervising the captain or other vessel personnel or in conducting the voyage, should bear no liability. For example, owners / lessors of automobiles are not responsible for damages caused by the negligent operation of lessees or their employees.

## IV.    Conclusion

For the reasons stated above, C-B Marine Corporation prays that the court grant a summary judgment in its favor on all counts of the plaintiff's complaint directed against it.

Dated this 10th day of August, 2007        /s/ Mark G. Furey
　　　　　　　　　　　　　　　　　　　　　　　　Mark G. Furey, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant C-B
　　　　　　　　　　　　　　　　　　　　　　　　Marine Corporation


Thompson, Bull, Furey, Bass & MacColl, LLC, P.A.
120 Exchange St., 6th Floor
P.O. Box 447
Portland, ME  04112-0447
(207)  774-7600