UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEITH R. ABLOW,                            )
      PLAINTIFF,                          )
                                )
      V.                                  )
                                )
FORE RIVER DOCK & DREDGE, INC.,           )    CASE NO.:  1:05-CV-10347-RGS
C-B MARINE CORPORATION AND                )
MAINE COAST CONSTRUCTION, INC.,           )
      DEFENDANTS.                         )
                                )
                                )
                                )

## C-B MARINE CORPORATION'S STATEMENT OF MATERIAL FACT AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

**NOW COMES** the Defendant, C-B Marine Corporation (hereinafter "C-B"),

and submits the following as its statement of material facts as to which there is

no genuine issue to be tried.

1. At all relevant times Roger P. Hale was the sole officer and/or

   employee of C-B, and he was the president of C-B at all relevant times.

   (Hale Affidavit at ¶¶ 1 and 5).

2. On or about December 11, 2002 the tug SEAWIND II and the barge

   DS-64 ran aground on Plum Island in Newbury, Massachusetts at or

   near property allegedly owned by the Plaintiff, Keith Ablow.  (Hale

   Affidavit at ¶ 3).

3. In this lawsuit Mr. Ablow claims that debris from the tug SEAWIND II,

   from the barge DS-64, and from the crane and other equipment

   located on the barge fouled the beach near his home thereby causing

him property damage.  (Plaintiff's Complaint at ¶¶ 12 and 13; Hale

Affidavit at ¶ 4).

4.  At all relevant times, the sole business of C-B was and is to own

certain marine construction equipment and to rent that equipment out

to other parties including another defendant in this case, Fore River

Dock and Dredge, Inc. (hereinafter "Fore River") (Hale Affidavit at ¶ 6).

5.  At all relevant times, the tug SEAWIND II, barge DS-64, and the crane

and all other equipment located on the barge were rented by C-B to

Fore River under a certain Master Equipment Lease dated July 30,

1997.  (Hale Affidavit at ¶¶ 7 and 8 and Exhibit A).

6.  Under the terms of said Master Equipment Lease and in actuality, Fore

River had possession and use of the tug SEAWIND II, barge DS-64,

and the crane and other equipment located on the barge, and Fore

River exercised actual possession and use of the tug, the barge, and

the crane and other equipment.  (Hale Affidavit at ¶¶ 9 and 10).

7.  At no time did C-B hire or provide any captain or crew for the

SEAWIND II or barge DS-64.  All captains, crew, construction workers,

or others were provided by Fore River or by companies with whom

Fore River contracted.  (Hale Affidavit at ¶ 11).

8.  C-B rented the SEAWIND II, barge DS-64, and the crane and

equipment located on the barge to Fore River "AS IS" with the

stipulation that C-B "shall have no obligation to install, erect, test,

adjust or service the equipment", and Fore River had the sole

obligation to inspect, repair, and maintain the SEAWIND II, barge DS-
64, and the crane and all other equipment located on the barge. (Hale
Affidavit at ¶ 12).

9. In actual practice, C-B did not install, erect, test, adjust or service the
tug, barge, or the crane and equipment located on the barge, nor did it
inspect, repair, or maintain same. (Hale Affidavit at ¶ 13).

10. At all times, Fore River and Fore River alone was obligated to and did
pay all charges and expenses in connection with the operation of the
tug, barge, and crane and other equipment; comply with all laws and
ordinances with respect to the use, maintenance and operation of
these items; provide and maintain property damage and public liability
insurance with respect to these items; make all repairs and
replacements with respect to these items and maintain them in good
condition; and pay all taxes associated with said equipment. (Hale
Affidavit at ¶¶ 14 and 15 and Exhibit A).

11. C-B played no role whatsoever with respect to the voyage from
Gloucester, Massachusetts to the mouth of the Merrimack River made
by the SEAWIND II and barge DS-64 on or about December 11, 2002,
which voyage led to the grounding on Plum Island and to the instant
lawsuit. (Hale Affidavit at ¶ 16).

12. Specially, C-B played no role in selecting or paying captain and crew,
in planning the voyage or in executing the voyage. (Hale Affidavit at ¶
17).

13. C-B played no role in any decision concerning how or when the

   SEAWIND II, barge DS-64 or the crane and other equipment located

   on the barge would be removed from the beach on Plum Island and

   played no role in the removal itself.  (Hale Affidavit at ¶ 18).


Dated this 10th day of August, 2007                    Respectfully submitted,


                                                    /s/ Mark G. Furey
                                                    Mark G. Furey, Esq.
                                                    Attorney for Defendant C-B
                                                    Marine Corporation


Thompson, Bull, Furey, Bass & MacColl, LLC, P.A.
120 Exchange St., 6th Floor
P.O. Box 447
Portland, ME  04112-0447
(207) 774-7600