UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEITH R. ABLOW,<br>    Plaintiff<br><br>V.<br><br>FORE RIVER DOCK & DREDGE, INC.,<br>C.B. MARINE CORPORATION AND<br>MAINE COAST MARINE<br>CONSTRUCTION, INC.,<br>    Defendants | Case No. 1:05-cv-10347-RGS |

**AFFIDAVIT OF ROGER P. HALE IN SUPPORT OF C-B MARINE
CORPORATION'S MOTION FOR SUMMARY JUDMENT.**

I, Roger P. Hale, being first duly sworn depose and say:

1. My name is Roger P. Hale. I am the President of C-B Marine Corporation (hereinafter "C-B"). I was the President of C-B Marine Corporation on December 11, 2002, when the event giving rise to this lawsuit occurred.

2. The facts stated in this Affidavit are based on my personal knowledge.

3. On or about December 11, 2002 the Tug *SEAWIND II* and the Barge *DS64* ran aground on Plum Island in Newbury, Massachusetts at or near property allegedly owned by the Plaintiff, Keith Ablow.

4. The gist of Mr. Ablow's lawsuit against C-B is that debris from the Tug *SEAWIND II,* from the Barge *DS64,* and from a crane and other equipment located on the barge fouled the beach near his home thereby causing him property damage.

5. On December 11, 2002 and up to today I was the sole officer and/or employee of C-B.

1

6. For over five years prior to December 11, 2002, on December 11, 2002 itself, and from that date until today, the sole business of C-B was and is to own certain marine construction equipment and to rent that equipment out to other parties including another Defendant in this case, Fore River Dock & Dredge, Inc. (hereinafter "Fore River").

7. For several years prior to December 11, 2002, and on December 11, 2002, C-B rented the Tug *SEAWIND II,* Barge *DS64,* and the crane and all other equipment on the barge to Fore River.

8. The *SEAWIND II,* Barge *DS64,* and the crane and other equipment located on the barge were rented by C-B to Fore River under a certain Master Equipment Lease dated July 30, 1997 and attached hereto as **EXHIBIT A**.

9. Under the terms of said Master Equipment Lease, Fore River was given possession and use of the *SEAWIND II,* Barge DS64, and the crane and other equipment located on the barge.

10. Prior to December 11, 2002, and on December 11, 2002 itself and thereafter, Fore River exercised actual possession and use of the tug, of the barge, and of the crane and equipment located on the barge to the exclusion of C-B.

11. At no time, including on or about December 11, 2002, did C-B hire or provide any captain or crew for the *SEAWIND II* or Barge *DS64.* All captain, crew, construction workers, or others were provided by Fore River or by companies with whom Fore River contracted.

12. The *SEAWIND II*, Barge *DS64*, and the crane and equipment located on the barge were rented to Fore River "AS IS" with the stipulation that C-B "shall have no obligation to install, erect, test, adjust or service the equipment." (See Exhibit A at page

2.) Fore River had the sole obligation to inspect, repair, and maintain the *SEAWIND II*, Barge *DS64*, and the crane and all other equipment located on the barge.

13. In fact, C-B did not install, erect, test, adjust or service the tug, barge, and crane and equipment located on the barge nor did it inspect, repair, or maintain same.

14. At all times, Fore River and Fore River alone was obligated to pay all charges and expenses in connection with the operation of the tug, barge, crane and other equipment; to comply with all laws and ordinances with respect to the use, maintenance and operation of these items; to provide and maintain property damage and public liability insurance with respect to these items; to make all repairs and replacements with respect to these items and to maintain them in good condition; and to pay all taxes associated with said equipment. (See Exhibit A at pages 2-3.)

15. In fact, at all times, Fore River did pay all charges and expenses in connection with the operation of the tug, barge, crane and equipment; did comply with all laws and ordinances with respect to the use, maintenance and operation of same; did provide and maintain insurance; did all repairs and replacements with respect to these items and did maintain them in good condition; and did pay all taxes associated with the tug, barge, and crane and equipment located on the barge.

16. C-B played no role whatsoever with respect to the voyage from Gloucester, Massachusetts to the mouth of the Merrimack River made by the *SEAWIND II* and Barge *DS64* on or about December 11, 2002, which voyage led to the grounding on Plum Island and to the instant lawsuit.

17. Specifically, C-B played no role in selecting or paying captain and crew, in planning the voyage, or in executing the voyage.

18. C-B played no role in any decision concerning how or when the *SEAWIND II,* Barge *DS64*, or the crane and other equipment located on the barge would be removed from the beach on Plum Island and played no role in the removal itself.

/s/ Roger P. Hale    8/03/2007
Roger P. Hale


STATE OF MAINE
COUNTY OF CUMBERLAND, ss.

On the 3rd day August 2007 personally appeared the above-named **Roger P. Hale** and made oath that the facts stated in the forgoing affidavit are true to his personal knowledge.

Before me,


/s/ Lynn R. Gallant
Notary Public
Lynn R. Gallant
Notary Public, Maine
My Commission Expires February 17, 2012

4

# *MASTER EQUIPMENT LEASE*

AGREEMENT OF LEASE dated as of July 30, 1997, between **C.B. MARINE CONSTRUCTION, INC.**, a Maine corporation, having a place of business at 450 Commercial Street, Portland, Maine 04101, ("Lessor"), and **FORE RIVER DOCK & DREDGE, INC.**, ("Lessee"), having a place of business at 450 Commercial Street, Portland, Maine 04101.

Lessee desires from time to time to lease from Lessor personal property to be described in one or more schedules of leased equipment ("Schedule"). Lessor is willing to lease such personal property to Lessee at the rent, for the term and upon the conditions provided hereinafter. Any present and future Schedule executed by Lessor and Lessee which is identified as being a part of this lease, shall be deemed to incorporate by reference all the terms and conditions of this lease except as provided in any such Schedule.

1. *EQUIPMENT LEASED AND TERM*: This lease shall cover such personal property as is described in any Schedule executed by Lessee, accepted by Lessor in writing and identified as a part of this lease (which personal property with all replacement parts, additions, repairs, accessions and accessories incorporated therein and/or affixed thereto is hereinafter called the "equipment"). Lessor hereby leases to Lessee and Lessee hereby hires and takes from Lessor, upon and subject to the covenants and conditions hereinafter contained, the equipment described in any Schedule. The term of this lease with respect to any item of equipment shall be for the period as set forth in the Schedule. Lessee hereby gives Lessor authority to insert the actual commencement date and date of first rental payments for any item of equipment in any Schedule as well as such items as serial numbers if such are not already inserted when such Schedule is executed by Lessee.

2. *RENT*: Rent may be fixed or may be percentage rent, as indicated on the Schedule. The aggregate rent payable with respect to each item of equipment shall be in the amount or percentage shown with respect to such item on the Schedule. In the case of percentage rent, rent shall be calculated as a percentage of Lessee's gross revenues derived from operation and use of the particular equipment in question. Lessee shall pay to Lessor the aggregate rental for each item of equipment for the full period and term for which the equipment is leased, such rental to be payable at such times and in such amounts for each item of equipment as shown in the Schedule. In no event, however, shall the the amount of the aggregate monthly payments due hereunder be less than Three Thousand Six Hundred Dollars ($3,600.00), regardless of the Schedule.

All rent shall be paid at Lessor's place of business shown above, or such other place as Lessor may designate by written notice to the Lessee. **All rents shall be paid without notice or demand and without abatement, deduction or set-off of any amount whatsoever.** The operation and use of the equipment shall be at the risk of Lessee and not of Lessor and the obligation of Lessee to pay rent hereunder shall be unconditional.

3. *DESTRUCTION OF EQUIPMENT*: If any equipment is totally destroyed, the liability of the Lessee to pay rent therefor may be discharged by paying to Lessor all the rent due thereon, plus all

the rent to become due thereon less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage.

In the event of partial destruction of any equipment, the rent due and to become due thereon shall not abate and Lessee shall, at its own expense, promptly cause such equipment to be restored to usable condition, but Lessor shall, upon receiving satisfactory evidence of such restoration, promptly pay Lessee the proceeds of any insurance or compensation received by reason of such damage. If the estimated cost of restoring such equipment exceeds 50% of the unmatured rent therefor, such equipment shall, on notice by Lessee, be deemed, for all purposes hereof, to be totally destroyed and the liability of Lessee to pay rent therefor shall be discharged if Lessee pays the rent described in the preceding paragraph of this Section.

Lessor shall not be obligated to undertake by litigation or otherwise the collection of any claim against any person for loss or damage to the equipment.

Except as expressly provided above, the total or partial destruction of any equipment or the total or partial loss of use or possession thereof to Lessee shall not release or relieve Lessee from the duty to pay the rent herein provided.

4. *NO WARRANTIES BY LESSOR; MAINTENANCE: COMPLIANCE WITH LAWS AND INSURANCE*: Lessor, not being the manufacturer of the equipment, nor a manufacturer's agent, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, MERCHANTABILITY OR PERFORMANCE OF THE EQUIPMENT OR OF THE MATERIAL OR WORKMANSHIP THEREOF, IT BEING AGREED THAT THE EQUIPMENT IS LEASED "AS IS" AND THAT ALL SUCH RISKS, AS BETWEEN LESSOR AND LESSEE ARE TO BE BORNE BY LESSEE AT ITS SOLE RISK AND EXPENSE, and Lessee accordingly agrees not to assert any claim whatsoever against Lessor based thereon. Lessee further agrees, regardless of cause, not to assert any claim whatsoever against Lessor for loss of anticipatory profits or consequential damages. Lessor shall have no obligation to install, erect, test, adjust or service the equipment.

No oral agreement, guaranty, promise, condition, representation or warranty shall be binding; all prior conversations, agreements or representations related hereto and/or to the equipment are integrated herein, and no modification hereof shall be binding unless in writing signed by Lessor. Lessee agrees, at its own cost and expense, (a) to pay all shipping charges and other expenses incurred in connection with the delivery of the equipment to Lessee; (b) to pay all charges and expenses in connection with the operation of each item of equipment; (c) to comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the equipment; (d) to maintain at all times public liability, property damage, fire with extended coverage, theft and comprehensive insurance in an amount satisfactory to Lessor, protecting Lessor's interest as it may appear, delivering to Lessor evidence of such insurance coverage, all insurance policies to provide that no cancellation thereof shall be effective without 30 days' prior written notice to Lessor; and (e) to make all repairs and replacements required to be made to maintain the equipment in good condition, reasonable and ordinary wear and tear excepted.

2

5. *TAXES*: Lessee agrees that, during the term of this lease, in addition to the rent and all other amounts provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges (including penalties and interest, if any, and fees for titling or registration, if required) levied or assessed: (a) upon the interest of Lessee in the equipment or upon the use or operation thereof or on the earnings arising therefrom; and (b) against Lessor on account of its acquisition or ownership of the equipment or any part thereof, or the use or operation thereof or the leasing thereof to Lessee, or the rent herein provided for, or the earnings arising therefrom, exclusive, however, of any taxes based on net income of Lessor. Lessee agrees to file, in behalf of Lessor, all required tax returns and reports concerning the equipment with all appropriate governmental agencies, and within not more than 45 days after the due date of such filing to send Lessor confirmation, in form satisfactory to Lessor, of such filing.

6. *LESSOR'S TITLE, RIGHT OF INSPECTION AND IDENTIFICATION OF EQUIPMENT*: **Title to the equipment shall at all times remain in Lessor** and Lessee will at all times protect and defend, at its own cost and expense, the title of Lessor from and against all claims, liens and legal processes of creditors of Lessee and keep all the equipment free and clear from all such claims, liens and processes. The equipment is and shall remain personal property. Upon the expiration or termination of this lease with respect to any item of equipment; (i) Lessee at Lessee's sole expense shall return such equipment unencumbered to Lessor at the place where the rent is payable or to such other place as Lessor and Lessee agree upon, and in the same condition as when received by Lessee, reasonable wear and tear resulting from use thereof alone excepted, or (ii) in lieu of returning such equipment to Lessor, Lessee agrees that Lessee will, upon request of Lessor, store such equipment on Lessee's premises, at an inside location protected from the weather and elements, without charge to Lessor for a period of 180 days following the date of expiration or termination of this lease. During such storage period Lessee shall not use the equipment for any purpose. Upon expiration of such storage period Lessee will return such equipment to Lessor in accordance with the provisions of (i) above. Lessor shall have the right from time to time during reasonable business hours to enter upon Lessee's premises or elsewhere for the purpose of confirming the existence, condition and the proper maintenance of the equipment and during any period of storage Lessor shall also have the right to demonstrate and show the equipment to others. Lessee shall, upon the request of Lessor, and at its own expense firmly affix to the equipment, in a conspicuous place, such a decalcomania or metal plate as shall be supplied by Lessor showing **C.B. MARINE CONSTRUCTION, INC.** as the owner and Lessor of such equipment.

7. *POSSESSION, USE AND CHANGES IN LOCATION OF EQUIPMENT*: So long as Lessee shall not be in default under the lease it shall be entitled to the possession and use of the equipment in accordance with the terms of this lease. The equipment shall be used in the conduct of the lawful business of Lessee, and no item of equipment shall be removed from its location shown on the Schedule, without the prior written consent of Lessor. Lessee shall not, without Lessor's prior written consent, part with possession or control of the equipment or attempt or purport to sell, pledge, mortgage or otherwise encumber any of the equipment or otherwise dispose of or encumber any interest under this lease.

8. *PERFORMANCE OF OBLIGATIONS OF LESSEE BY LESSOR*: In the event that the Lessee shall fail duly and promptly to perform any of its obligations under the provisions of Sections

3

4, 5 and 6 of this lease, Lessor may, at its option, perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense (including reasonable attorneys' fees), penalty or other liability incurred by Lessor in such performance, together with interest at the rate of 1.5% per month thereon (if not prohibited by law, otherwise at the highest lawful contract rate) until paid by Lessee to Lessor, shall be payable by Lessee upon demand as additional rent for the equipment.

9. *DEFAULT*: An event of default shall occur if: (a) Lessee fails to pay when due any installment of rent and such failure continues for a period of 10 days, (b) Lessee shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder and such failure continues uncured for 15 days after written notice thereof to Lessee by Lessor, (c) Lessee ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of all or any substantial part of its assets or properties, or if it or its shareholders shall take any action looking to its dissolution or liquidation, (d) within 60 days after the commencement of any proceedings against Lessee seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within 60 days after the appointment without Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated, or (e) Lessee attempts to remove, sell, transfer, encumber, part with possession or sublet the equipment or any item thereof.

Upon the occurrence of an event of default, Lessor shall have all the rights and remedies provided by applicable law and by this lease. In addition, Lessor, at its option, may: (a) declare all unpaid rentals and other sums due and to become due hereunder immediately due and payable; (b) proceed by appropriate court action or actions or other proceedings either at law or in equity to enforce performance by Lessee of any and all covenants of this lease and to recover damages for the breach thereof; (c) demand that Lessee deliver the equipment forthwith to Lessor at Lessee's expense at such place as Lessor may designate; and (d) without notice or liability or legal process, enter by itself and/or its agents into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where the equipment may be or by Lessor is believed to be, and repossess all or any item thereof, disconnecting and separating all thereof from any other property and using all force necessary or permitted by applicable law so to do, Lessee hereby expressly waiving all further rights to possession of the equipment and all claims for injuries suffered through or loss caused by such repossession.

Notwithstanding recovery of the equipment by Lessor, Lessor shall, nevertheless, also be entitled to recover immediately as liquidated damages for loss of the bargain and not as a penalty any unpaid rent that accrued on or before the occurrence of the event of default plus an amount equal to the difference between the present value, as of the date of the occurrence of such event of default, of the aggregate rent reserved hereunder for the unexpired term of this lease and the then present value of the aggregate rental value of all equipment for such unexpired term which the Lessor reasonably

estimates to be obtainable for the use of all of the equipment during such unexpired term. If any statute governing the proceeding in which such damages are to be proved specifies the amount of such claim, Lessor shall be entitled to prove as and for damages for the breach an amount equal to that allowed under such statute. The provisions of this paragraph shall be without prejudice to any rights given to the Lessor by such statute to prove for any amounts allowed thereby. Should any proceedings be instituted by or against Lessor for monies due to Lessor hereunder and/or for possession of any or all of the equipment or for any other relief, Lessee shall pay the reasonable attorneys' fees of Lessor.

No remedy of Lessor hereunder shall be exclusive of any remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy. A waiver of a default shall not be a waiver of any other or a subsequent default on the same or any other occasion.

10. *INDEMNITY*: Lessee agrees that Lessor shall not be liable to Lessee for, and Lessee shall indemnify and save Lessor harmless from and against any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from or caused directly or indirectly by (a) Lessee's failure to promptly perform any of its obligations under the provisions of Sections 4, 5 and 6 of this lease or (b) injury to person or property resulting from or based upon the actual or alleged use, operation, delivery or transportation of any or all of the equipment or its location or condition, or (c) inadequacy of the equipment, or any part thereof, for any purpose or any deficiency or defect therein or the use or maintenance thereof or any repairs, servicing or adjustments thereto or any delay in providing or failure to provide any thereof or any interruption or loss of service or use thereof or any loss of business; and shall, at its own cost and expense, defend any and all suits which may be brought against Lessor, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessor in any such action or actions, provided, however, that Lessor shall give Lessee written notice of any such claim or demand. Lessee agrees that its obligations under this Section 10 shall survive the expiration or termination of this lease.

11. *ASSIGNMENT, NOTICES AND WAIVERS*: This lease and all rights of Lessor hereunder shall be assignable by Lessor without Lessee's consent, but Lessee shall not be obligated to any assignee of Lessor except after written notice of such assignment from Lessor. Without the prior written consent of Lessor, Lessee shall not assign this lease or its interests hereunder or enter into any sublease with respect to the equipment covered hereby. All notices relating hereto shall be delivered in person to an officer of the Lessor or Lessee or shall be mailed registered to Lessor or Lessee at its respective address above shown or at any later address last known to the sender.

12. *FURTHER ASSURANCES*: Lessee shall execute and deliver to Lessor, upon Lessor's request such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this lease and Lessor's rights hereunder. If Lessor in good faith believes itself insecure or performance impaired, it may call a default hereunder or, instead of calling a default, Lessor may demand, and Lessee hereby agrees to give, additional equipment or other collateral as security for the obligations hereunder.

13. *LEASE IRREVOCABILITY*: This lease is irrevocable for the full terms thereof as set forth in any Schedule and for the aggregate rentals therein reserved and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or

for any other reason, and delinquent installments of rent shall bear interest at 1 ½% per month if not prohibited by law, otherwise at the highest lawful contract rate.

14. *RENEWAL*:  The initial lease term as to any item of equipment shall be automatically renewable from year to year (subject to change of rent by Lessor), unless notice of non-renewal is given by either party to the other at least 30 days prior to the commencement of the renewal term. Lessor shall notify Lessee of any change in rent at least 30 days before the commencement of any renewal term. Thereupon, this Lease shall be renewed for the stated renewal term at the stated renewal rental with the other provisions and conditions of the Lease continuing unchanged.

**C.B. MARINE CONSTRUCTION, INC.** (Lessor)

By: _____
Its: PRESIDENT

**FORE RIVER DOCK & DREDGE, INC.** (Lessee)

By: _____
Its: PRESIDENT

FORE RIVER DREDGE EQUIPMENT LEASE 7-15-97

6

## SCHEDULE OF LEASED EQUIPMENT

A part of Master Equipment Lease between C.B. MARINE CONSTRUCTION, INC. and FORE RIVER DOCK & DREDGE, INC., dated _____, 1997.

The equipment listed on this Schedule will be based and located at 450 Commercial Street, Portland, Maine 04101.

| Item no. | Description of Equipment | Percentage Rental | Monthly Rental (if applicable) | Date of Commencement | Date of First Monthly Rental | Percentage Rental Payment Interest |
|---|---|---|---|---|---|---|
| | | % | $ | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Lease Term:** The term of this lease for the items described in this Schedule shall be 12 months from date of commencement, automatically renewable for an additional 12 months, year to year, absent notice of non-renewal.

**Rentals:** Lessee shall pay to Lessor the stated aggregate rentals, (either fixed monthly rent or percentage rent as set forth above, for and during the term hereof.

Executed on _____, 1997

Accepted:

C.B. MARINE CONSTRUCTION, INC.            FORE RIVER DOCK & DREDGE, INC.
(Lessor)                                                                (Lessee)

By: _____                                        By: _____
Its: _____                                        Its: _____

c.b. marine Schedule to equipment lease